## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## WICHITA FALLS DIVISION

| | |
|---|---|
| **LUZ DE AMOR EYTALIS**, § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | No. 7:24-cv-00147-O-BP |
| § | |
| § | |
| **NATIONAL ASSOCIATION OF** § | |
| **REALTORS**, *et al.*, § | |
| § | |
| **Defendants.** § | |

## **COMPLAINT**

# *TABLE OF CONTENTS*

***TABLE OF AUTHORITIES*** .................................................................................................. ***ii***

**A. INTRODUCTION** ............................................................................................................. 1

**B. PARTIES** ............................................................................................................................ 2

**C. JURISDICTION AND VENUE** ....................................................................................... 3

**D. STATEMENT OF FACT** ................................................................................................. 3

**E. COUNTS** ............................................................................................................................ 9

    *COUNT I: Violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-2* ................................ *9*

    *COUNT II: Violation of the Clayton Act, 15 U.S.C. § 14* ..................................................... *9*

    *COUNT III: Breach of Contract* ........................................................................................ *10*

    *COUNT IV: Unjust Enrichment* ........................................................................................ *11*

**F. PRAYER FOR RELIEF** ................................................................................................ 11

**G. JURY TRIAL DEMAND** ............................................................................................... 12

    *CERTIFICATE OF SERVICE* ........................................................................................... *14*

## Table of Authorities

**Federal Cases**

1. **Brown Shoe Co. v. United States**, 370 U.S. 294 (1962) ............................................ 7, 9
2. **Eastman Kodak Co. v. Image Tech. Servs., Inc.**, 504 U.S. 451 (1992) …………..... 5, 9
3. **Jefferson Parish Hosp. Dist. No. 2 v. Hyde**, 466 U.S. 2 (1984) ……………….... 4, 5, 8
4. **Northern Pac. Ry. Co. v. United States**, 356 U.S. 1 (1958) ....................................... 5, 8
5. **United States v. Realty Multi-List, Inc.**, 629 F.2d 1351 (5th Cir. 1980) ....................... 4

**Federal Statutes**

1. **Sherman Antitrust Act**, 15 U.S.C. §§ 1-2 ................................................................. 1, 3, 8
2. **Clayton Act**, 15 U.S.C. § 14 ...................................................................................... 1, 3, 9
3. **Private Antitrust Actions**, 15 U.S.C. § 15 ...................................................................... 3
4. **Supplemental Jurisdiction**, 28 U.S.C. § 1367 ................................................................. 3
5. **Venue**, 28 U.S.C. § 1391(b) ............................................................................................. 3

**State Regulations**

1. **Texas Real Estate Commission Rule § 535.2(i)** ............................................................ 6

**Exhibits**

1. **Exhibit 1**: Email dated May 15, 2023 ................................................................................ 4
   *Plaintiff's notification to WFAR regarding inactive agents.*
2. **Exhibit 2**: Email dated June 5, 2024 .................................................................................. 4
   *WFAR's response and invoice issuance for non-member dues.*
3. **Exhibit 3**: Invoice dated August 30, 2023 ......................................................................... 6
   *Invoice for multiple agents, including disputed charges for inactive members.*
4. **Exhibit 4**: Invoice dated June 5, 2024 ............................................................................... 6
   *Invoice for John B. Lewis, including full membership dues.*
5. **Exhibit 5**: Email from Greg Hadsell dated August 5, 2024 ............................................ 6
   *Assurance of fee adjustments for inactive agents, which were never fulfilled.*
6. **Exhibit 6**: Email from Greg Hadsell dated November 22, 2024 ………………….…... 6
   *Reassertion of original invoice amounts without promised adjustments.*
7. **Exhibit 7: Wichita Falls Association of Realtors ByLaws**

A. **INTRODUCTION**

This is a civil action seeking damages and injunctive relief for Defendants' violations of federal civil and antitrust laws, specifically the Sherman Antitrust Act, 15 U.S.C §§ 1-2, and the Clayton Act, 15 U.S.C. § 14, as well for breach of contract, unjust enrichment, discriminatory practices, and for creating a monopolistic system that imposes forced membership. These practices disproportionately affect minority professionals and have resulted in inequitable enforcement of rules and exclusion from fair competition in the real estate industry.

Plaintiff Luz de Amor Eytalis, a licensed real estate broker in Wichita Falls, Texas, alleges that Defendants National Association of Realtors (NAR), Texas Association of Realtors (TAR), Wichita Falls Association of Realtors (WFAR), and Wichita Falls Association of Realtors MLS (MLS) have engaged in monopolistic practices that unlawfully restrict competition in the real estate market by requiring brokers to join multiple associations as a precondition for accessing MLS services, imposing a financial burden without proportional benefit and penalizing agencies if members opt to not join the membership impeding their ability to do business.

In 2010, Plaintiff submitted a membership application to join WFAR. This application established a contractual relationship governed by the bylaws of WFAR, as well as policies established by NAR and TAR. These bylaws outlined the terms of membership, including dues assessments, benefits, and procedural fairness in the enforcement of membership rules. Plaintiff relied on these bylaws as the foundation for her membership obligations and WFAR's duties to enforce its provisions equitably.

Plaintiff alleges that Defendants' conduct creates a "tying arrangement" in which access to MLS services, a separate product essential for real estate transactions, is conditioned on purchasing memberships to NAR, TAR, and WFAR. Such arrangements have been found to

1

violate antitrust law as they substantially foreclose competition, as established in *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958), and *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984). Furthermore, these practices disproportionately burden small and minority-owned brokerages by increasing costs and stifling growth opportunities, contrary to the purpose of antitrust laws designed to promote competitive markets.

Defendants NAR, TAR, and WFAR enforce their membership-based requirements through hierarchical structures. NAR sets national policies, which are implemented by TAR and WFAR, resulting in mandatory membership and penalties for noncompliance. WFAR directly enforces these policies through its bylaws and dues structure, tying access to MLS services to membership dues and restricting competition for brokers seeking alternative solutions.

### B. PARTIES

1. Plaintiff, Luz de Amor Eytalis, is a resident of Wichita Falls, Texas, residing at 4809 Reginald Dr, Wichita Falls, Texas 76308. Plaintiff operates as a licensed real estate broker through Strategic Realty and SL Real Estate.

2. Defendant, National Association of Realtors (NAR), is a national trade association for real estate professionals with its principal office located at 500 New Jersey Ave NW, Washington, DC 20001.

3. Defendant, Texas Association of Realtors (TAR), is a state-level trade association with its principal office located at 1115 San Jacinto Blvd., Ste 200, Austin, Texas 78701.

4. Defendant, Wichita Falls Association of Realtors (WFAR), a local association and

5. MLS provider in Wichita Falls, Texas, with its principal office at 4007 Call Field Rd, STE B, Wichita Falls, Texas 76308.

2

6. Defendants, Wichita Falls Association of Realtors MLS (WFMLS), a local MLS provider in Wichita Falls, Texas, with its principal office at 4007 Call Field Rd, STE B, Wichita Falls, Texas 76308.

## C. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims arise under federal law, including the Sherman Antitrust Act (15 U.S.C. §§ 1-2) and the Clayton Act (15 U.S.C. § 14). The Court has supplemental jurisdiction over state law claims of breach of contract and unjust enrichment pursuant to 28 U.S.C. § 1367. This Court also has jurisdiction under 15 U.S.C. § 15, which grants private parties the right to recover damages for injuries caused by violations of federal antitrust laws.

8. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this complaint occurred in this district, and the Defendants conduct business within this district.

## D. STATEMENT OF FACT

9. Defendants have established an exclusionary practice, requiring brokers to join multiple associations (NAR, TAR, and WFAR) to gain access to MLS services provided by WFMLS, which are essential for conducting real estate transactions. This is confirmed by WFAR's own bylaws and rules, which mandate dues payments and enforce penalties, including membership termination, for any unpaid dues by brokers or their affiliated agents.

10. This mandatory membership requirement constitutes an unlawful tying arrangement, as defined in Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2 (1984). Brokers must "purchase" association memberships they may not need or want to obtain MLS services. For example, correspondence provided by WFAR demanded payment of dues for agents who were inactive or affiliated with other associations, such as John B. Lewis and Skyler

3

Houle, despite clear disputes over these agents' statuses. Relevant email correspondence includes Exhibit 1 (email dated May 15, 2023), Exhibit 2 (email dated June 5, 2024), Exhibit 5 (email correspondence from Greg Hadsell dated August 5, 2024), and Exhibit 6 (email correspondence dated November 22, 2024). The tying arrangement harms competition by forcing brokers who wish to access MLS services, which constitute an essential facility, to pay for association memberships they may not need or want. This conduct violates principles established in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992), which prohibits tying arrangements that exploit market power over an essential facility to increase costs for competitors. By financially penalizing brokers who attempt to operate independently of Defendants' network, WFAR prevents market entry by smaller or alternative trade organizations.

11. This structure has created an anti-competitive monopoly over MLS services, limiting the market's ability to support alternative trade organizations, thereby stifling competition in violation of the Sherman Act, 15 U.S.C. §§ 1-2. Defendants' own statements in bylaws and policies affirm the use of a "Fair Share" dues formula that financially penalizes brokers for not affiliating all licensed agents with the association.

12. Plaintiff and similarly situated brokers are subject to excessive and unjustified fees due to the forced memberships, as evidenced by the invoices demanding fees for agents like Skyler Houle and Huong Vu Mai, despite these agents being inactive or outside WFAR's jurisdiction.

13. Between May 2023 and August 30, 2023, Plaintiff received no invoices for the non-member annual dues for her agents, meaning there were no financial obligations unpaid by the broker. During this time, Plaintiff had notified WFAR of the inactive status of agents Skyler Houle and Huong Vu Mai, requesting that the board consider waiving their fees due to their inactivity and non-use of membership services. Despite these notifications, WFAR declined to

grant any waiver or exception. Instead, they issued an invoice on August 30, 2023 (Exhibit 3) for $3,496.53, which included dues, fees for services, and benefits that usually require application prior to acceptance, as stipulated in the bylaws. This invoice was issued with a 60-day compliance deadline under threat of membership termination. Payment was finally made in early November 2023, prior to the actual due date for membership dues, which typically occur at the end of the year. This process created significant confusion and undue hardship for Plaintiff, who had previously paid dues faithfully for over a decade without requesting exceptions. WFAR's actions also violated Article VI of its bylaws, which requires fees to be assessed equitably and prohibits penalties for agents who are not actively utilizing services. By failing to adhere to its own bylaws, WFAR engaged in arbitrary and retaliatory practices that imposed unnecessary financial hardship on Plaintiff.

    A.    **Article VI, Section 2**: Requires dues to be assessed equitably and prohibits penalties for agents not actively utilizing services.

    B.    **Article VIII**: Mandates that disputes over fees and penalties must follow a fair and transparent process. By failing to adhere to these provisions, WFAR acted arbitrarily, causing undue financial hardship to Plaintiff.

14.    WFAR subsequently issued another invoice on June 5, 2024 (Exhibit 4) for $1,754.26, which covered dues, fees for services, and benefits that usually require application prior to acceptance, for a single agent, John B. Lewis. In communications with WFAR, Plaintiff had explained to Michelle DeWoody, Director of Member Services, that this agent was not in the area and had no communication with Plaintiff following sponsorship. WFAR rather than send notification of non-member and asking to remedy the issue, sent a full charge invoice and demanded payment, citing prior instances where Plaintiff had requested similar waivers and that

they had previously been warned. The association also ignored the procedural fairness required by their own bylaws, creating additional financial hardship and inconsistency in enforcement.

A. Following this invoice, WFAR's Executive Vice President Greg Hadsell assured Plaintiff in written communication that portions of the invoice, including assessment fees, MLS fees, and Sentrilock fees, would be removed due to the termination of sponsorship for John B. Lewis. Despite this assurance, Plaintiff never received an updated invoice reflecting these promised adjustments.

B. Instead, on November 22, 2024, after Plaintiff had initiated a small claims lawsuit (Exhibit 6) to recover fees overcharged and paid that WFAR refused to remove from the prior invoice, Hadsell sent an email reasserting the amounts from the original June 2024 invoice, without making any adjustments as previously promised (Exhibit 5). This action contradicted WFAR's earlier communication and further demonstrated their inconsistent and arbitrary enforcement of dues policies, which created significant confusion and financial harm for Plaintiff.

C. WFAR's retaliatory actions included issuing invoices for agents whose inactive status had been previously reported and confirmed, refusing to adjust fees as promised, and threatening to terminate Plaintiff's membership. These actions were intended to coerce compliance and financially penalize Plaintiff for disputing fees.

D. Plaintiff intends to prove, based on the email timelines and invoices alone, that Defendants violated WFAR's bylaws and Plaintiff's rights as a paying member. These communications, detailed in Exhibits 3, 4, 5, and 6, demonstrate Defendants' arbitrary and retaliatory enforcement of dues and fees, failure to adhere to procedural fairness, and breach of their contractual obligations under the bylaws.

15. In addition to demanding dues, WFAR unlawfully directed Plaintiff to remove inactive agents from sponsorship with the Texas Real Estate Commission (TREC) as a means of avoiding liability for these agents' dues. This demand was an overreach of WFAR's authority, as it contravened TREC regulations and placed undue administrative burdens on Plaintiff. WFAR's interference in broker-agent sponsorship relationships further demonstrates the coercive practices employed to enforce their due's structure.

    A. The tying arrangement harms competition by forcing brokers who wish to access MLS services, which constitute an essential facility, to pay for association memberships they may not need or want. This conduct violates principles established in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992), which prohibits tying arrangements that exploit market power over an essential facility to increase costs for competitors. By financially penalizing brokers who attempt to operate independently of Defendants' network, WFAR prevents market entry by smaller or alternative trade organizations.

    B. WFAR's demand that Plaintiff remove inactive agents from sponsorship with the Texas Real Estate Commission (TREC) violated state regulations governing brokerage operations. Specifically, TREC Rule §535.2(i) provides that brokers have sole discretion over their sponsorship decisions and imposes no requirement to terminate sponsorship based on local association membership status. By interfering with Plaintiff's sponsorship decisions, WFAR exceeded its authority and placed undue administrative burdens on her operations.

16. WFAR has also invoiced Plaintiff for full membership dues and fees for agents after being notified, in accordance with WFAR's bylaws, of these agents' intentions not to maintain membership. These invoices were issued well after the fact, creating additional

confusion and financial hardship. The bylaws provide no clarity on the procedural implications if notifications are not processed within the prescribed time frame, leaving Plaintiff and other brokers vulnerable to arbitrary enforcement.

17. Defendants' practices result in disproportionate harm to independent brokers and small, minority-owned businesses, as Plaintiff has experienced firsthand. The practice of requiring brokers to pay for all salespersons in the firm, regardless of their membership status or activity, significantly limited Plaintiff's ability to sponsor additional non-member agents over the past ten years. These mandatory fees penalize brokers financially and create barriers to entry for potential agents, and restricted Plaintiff's income-generating potential in a way that is perhaps immeasurable. Such exclusionary practices harm small businesses disproportionately, as recognized in *Brown Shoe Co. v. United States*, 370 U.S. 294, 334 (1962). This policy, enforced through mandatory fees and penalties, directly harms Plaintiff's ability to operate competitively. The financial burden from forced memberships and dues, totaling $5,250.79 for disputed agents across two invoices, directly harms Plaintiff's ability to operate competitively. These damages are ongoing and difficult to quantify fully, but they represent a substantial economic burden.

18. Defendants' enforcement of these dues policies disproportionately affects minority brokers and independent agencies. For example, WFAR's bylaws mandate that brokers are penalized for the actions or omissions of their sponsored agents, regardless of whether those agents derive any benefit from membership.

19. Defendants' tying arrangement, whereby brokers must purchase association memberships to access MLS services, constitutes a per se violation of antitrust law under *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958). Furthermore, this arrangement unreasonably restrains trade by foreclosing competition in the market for MLS services, as demonstrated in *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 12 (1984).

8

### E. COUNTS

**COUNT I: Violation of the Sherman Antitrust Act, 15 U.S.C. §§ 1-2**

20. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

21. Defendants' actions constitute an unreasonable restraint of trade under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by imposing forced membership requirements on brokers as a condition of accessing MLS services.

22. Defendants' conduct demonstrates monopolistic behavior in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2, by using their market power to eliminate competition and maintain exclusive control over MLS access. Defendants' tying arrangements harmed competition by restricting brokers from accessing MLS services unless they paid for unrelated association memberships. These practices foreclosed competition by deterring alternative MLS providers from entering the market and increasing costs for brokers and consumers, as recognized in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451 (1992). Defendants' tying arrangements also harmed consumers by reducing the availability of competitive real estate services and driving up transaction costs. These actions constitute a per se violation of the Sherman Antitrust Act, as established in *Northern Pac. Ry. Co. v. United States*, 356 U.S. 1 (1958).

**COUNT II: Violation of the Clayton Act, 15 U.S.C. § 14**

23. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

24. The forced membership structure constitutes an unlawful tying arrangement in violation of Section 3 of the Clayton Act, 15 U.S.C. § 14, which prohibits arrangements that may substantially lessen competition or create monopolistic dominance in a market.

25. The forced membership structure substantially lessens competition by preventing alternative MLS systems from entering the market. This conduct violates the Clayton Act, 15 U.S.C. § 14, which prohibits tying arrangements that create monopolistic dominance, as established in *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 461 (1992).

**COUNT III: Breach of Contract**

26. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

27. Defendants' issuance and enforcement of dues invoices, including the June 5, 2023, and August 30, 2023, invoices, violated the contractual and procedural obligations outlined in WFAR's own bylaws. This breach imposed inequitable financial burdens on Plaintiff by charging fees for agents who were not active members or beneficiaries of the association's services. The contractual relationship created by Plaintiff's membership application and WFAR's acceptance of her membership required adherence to WFAR's bylaws. By failing to follow these bylaws—specifically by charging fees for inactive agents, refusing to adjust invoices as promised, and failing to provide procedural fairness—WFAR materially breached its contractual obligations.

28. By issuing invoices for agents who were inactive or outside WFAR's jurisdiction and refusing to adjust fees despite prior notifications, Defendants violated Article VI of WFAR's bylaws, which require equitable fee assessments. These actions breached the contractual obligations established when Plaintiff joined WFAR and relied on its bylaws to govern the relationship.

29. Plaintiff will demonstrate that the email correspondence and invoice timelines prove that Defendants failed to follow WFAR's bylaws, which governed the contractual

relationship. By issuing fees and penalties in violation of these rules, Defendants materially breached their obligations.

**COUNT IV: Unjust Enrichment**

30.     Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

31.     Defendants have been unjustly enriched by extracting membership fees and MLS charges from Plaintiff without providing commensurate benefits, including fees for agents who were inactive or otherwise excluded from using WFMLS services.

32.     Defendants unjustly retained excessive fees charged for agents who were not utilizing MLS services, including fees for services that typically require application prior to acceptance. These practices deprived Plaintiff of financial resources without providing any proportional benefit, violating principles of equity, and resulting in unjust enrichment at Plaintiff's expense.

33.     Plaintiff will prove that Defendants unjustly retained fees charged for agents who were inactive, relying on timelines documented in Exhibits 3, 4, 5, and 6.

### F.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luz de Amor Eytalis respectfully requests that this Court grant the following relief:

a. A declaratory judgment that Defendants' forced membership policies and monopolistic practices violate the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, and the Clayton Act, 15 U.S.C. § 14;

b. A permanent injunction prohibiting Defendants from continuing their forced membership and tying arrangements.

c. An order requiring Defendants to establish alternative MLS systems that are not contingent upon membership in NAR, TAR, WFAR, or WFMLS.

d. An order mandating the establishment of a transparent and impartial dispute resolution system to address complaints brought by members without bias or undue financial burden.

e. Compensatory damages in an amount to be determined at trial, but no less than $5,800,000, to compensate Plaintiff for the harm caused by Defendants' unlawful conduct, including loss of income due to restricted income-generating potential over the past ten years.

f. Treble damages as permitted under the Sherman Antitrust Act to compensate for the harm caused by Defendants' anti-competitive practices and coercive policies.

g. Restitution for all unjust enrichment, including the refund of excessive fees.

h. Attorneys' fees and costs of this action; and

i. Such other and further relief as the Court deems just and proper.

j. An order requiring WFAR to amend its bylaws to include transparent procedures for fee disputes and agent notifications, ensuring equitable enforcement and procedural fairness for all members.

k. Such other and further equitable relief as may be necessary to restore competitive conditions in the market for MLS services.

### G.   JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**/s/Luz de Amor Eytalis**

4200 Fairway Blvd
Wichita Falls, Texas 76308
Tel: 940-257-3875

Email: Louallen76@gmail.com
Pro Se Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on [date], I served a true and correct copy of the foregoing Reply to Defendants' Brief in Support of Motion to Dismiss and Motion for Leave to Amend Complaint on the following counsel of record via CM/ECF and mail:

**For Defendants National Association of REALTORS® and Wichita Falls Association of REALTORS® (NAR and WFAR):**

White & Case LLP
Sean Gorman
Texas Bar No. 08218100
609 Main St., Suite 2900
Houston, TX 77002
Tel: (713) 496-9700
Fax: (713) 496-9701
Email: sean.gorman@whitecase.com


**For Defendant Texas Association of REALTORS® (TAR):**

Husch Blackwell
Chalon N. Clark
Texas Bar No. 24050045
1900 N. Pearl Street, Suite 1800
Dallas, TX 75201
Tel: (214) 999-6100
Fax: (214) 999-6170
Email: chalon.clark@huschblackwell.com


**Signature:** /s/Luz de Amor Eytalis

**Printed Name:** Luz de Amor Eytalis