**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **LUZ DE AMOR EYTALIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **No. 7:24-cv-00147-O-BP** |
| | § | |
| **NATIONAL ASSOCIATION** | § | |
| **OF REALTORS,** *et al.*, | § | |
| | § | |
| **Defendants.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint (ECF No. 52) and Brief in Support (ECF No. 53) filed on February 6, 2025; Plaintiff's Response filed on February 7, 2025 (ECF No. 54); and Defendants' reply filed on February 21, 2025 (ECF No. 56). After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT** Defendants' Motion to Dismiss (ECF No. 52) and **DISMISS** Eytalis's claims under the Sherman Act and Clayton Act. After dismissing Eytalis's federal law claims, Judge O'Connor should decline to exercise supplemental jurisdiction over the remaining state law claims and **DISMISS** them **without prejudice.**

## I.    BACKGROUND

Eytalis, a licensed real estate broker in Wichita Falls, Texas, brings this civil action under the Sherman Act, Clayton Act, and state law claims for breach of contract and unjust enrichment. ECF No. 36. In her Third Amended Complaint, Eytalis asserts that Defendants National Association of Realtors ("NAR"), Texas Association of Realtors ("TAR"), and Wichita Falls Association of Realtors ("WFAR") unlawfully required membership in those associations of

Eytalis and those agents whom she sponsored if she and her agents wished to access multiple listing services. ECF No. 51 at 4. She claims that this structure constitutes a tying arrangement in violation of federal antitrust laws and disproportionately burdens small and minority-owned real estate brokerages. *Id*. at 4-5. Specifically, she alleges that "[t]he forced membership structure substantially lessens competition by preventing alternative MLS systems from entering the market." *Id*. at 13. Further, she claims that "[t]his structure has created an anti-competitive monopoly over MLS services, limiting the market's ability to support alternative trade organizations, thereby stifling competition in violation of the Sherman Act, 15 U.S.C. §§ 1-2." *Id*. at 4.

According to the Third Amended Complaint, Eytalis joined WFAR in 2010. *Id*. at 4. Since then, she has been subject to its bylaws and policies that NAR and TAR established. *Id*. She states that these bylaws require that she pay membership dues for herself and all affiliated agents, regardless of those agents' membership status, geographic location, or activity level. *Id*. at 6-7. She asserts that that WFAR, acting under the direction of NAR and TAR, threatened termination of her membership and MLS access if she did not pay dues on behalf of certain agents whom she had identified as inactive or non-local. *Id*. at 7-9.

Eytalis further alleges that Defendants enforced these policies arbitrarily and inconsistently. *Id*. at 8-9. She claims that WFAR initially offered to remove certain fees but later rescinded the offer without explanation. *Id*. at 9. She also alleges that WFAR improperly demanded she remove certain agents from sponsorship with the Texas Real Estate Commission ("TREC"), despite there being no such requirement in TREC's rules. *Id*. at 10. She claims that these financial and administrative burdens impaired her from operating competitively, limited her ability to sponsor new agents, and caused her economic harm. *Id*. at 11. She indicates that "[t]he financial

burden from forced memberships and dues, totaling $5,250.79 for disputed agents across two invoices, directly harms Plaintiff's ability to operate competitively." *Id*. Finally, she states that "Defendants' enforcement of these dues policies disproportionately affects minority brokers and independent agencies." *Id*. Eytalis seeks declaratory judgment, a permanent injunction, and $5,800,000.00 in damages to compensate her for loss of income over the last 10 years. *Id*. at 14-15.

Defendants move to dismiss the case under Federal Rule of Civil Procedure 12(b)(6) arguing that Eytalis's claims "are supported only by vague and conclusory factual allegations." ECF No. 53 at 18. They also claim that the Third Amended Complaint "lacks each fundamental element of a Sherman Act claim—harm to competition, relevant market, market power, and exclusionary conduct," and that failure to plead any of these elements requires dismissal. *Id*. Eytalis responds that she has "sufficiently alleged all elements of a Sherman Act claim." ECF No. 54 at 8. Defendants reply that even though Eytalis asserts in her response that she has provided specific factual allegations for each element, she merely "repeats the same conclusions that appear in the [Third Amended Complaint] but cites no facts in support." ECF No. 56 at 6.

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To state a viable claim for relief, a complaint must include sufficient factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff ... and ask whether the pleadings contain 'enough facts to state a claim to

relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (citing *Twombly*, 550 U.S. at 547). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a motion to dismiss, a court may consider documents outside the complaint when they are: (1) attached to the motion to dismiss; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

**B.    *Pro se* parties**

The Court subjects a *pro se* party's pleadings to less rigid analysis than those of a party represented by counsel. "[A] *pro se* complaint, 'however inartfully pleaded,' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, "even a liberally-construed *pro se* ... complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Tex. at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26 (1977)). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976). However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to state a claim for relief." *Masika Brown Ray v. Anthony Boone*, No. 24-40169, 2024 WL 4372692, *1 (5th Cir. 2024) (citing *Coleman v. Lincoln Par. Det. Ctr.*, 858 F.3d 307, 309 (5th Cir. 2017).

**C.    Dismissal with or without prejudice**

There exists a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of*

*Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit has recommended that suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002); *Hines v. Wainwright*, 539 F.2d 433, 434 (5th Cir. 1976) (vacating and remanding a Rule 12(c) dismissal with instructions to the district court to dismiss without, instead of with, prejudice). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings. *Great Plains Tr. Co.*, 313 F.3d at 329; *see In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 548-49 (N.D. Tex. 2014) (Boyle, J.) (dismissing for failure to state a claim without prejudice, as dismissing with prejudice would be "too harsh a sanction").

Nonetheless, courts may appropriately dismiss an action with prejudice if the court finds that the plaintiff has alleged her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). Likewise, a court may dismiss an action with prejudice without affording plaintiff the chance to amend where the court invited the plaintiff to respond to the motion to dismiss, but she failed to do so. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995). If the court "outline[s] in [its] opinion the deficiencies" of plaintiff's pleading and "plaintiff nevertheless cannot . . . amend to satisfy [the relevant pleading standard,] the court can then dismiss the complaint with the assurance that plaintiff has been shown all the deference he is due." *Sims v. Tester*, No. 3:00-CV-0863-D, 2001 WL 627600, at *2-3 (N.D. Tex. Feb. 13, 2001) (quoting *Barber v. G.H. Rodgers*, No. CA3-84-1750-D (N.D. Tex. Sept. 13, 1988)). Moreover, courts may dismiss an action with prejudice without permitting amendment if the defendant is entitled to absolute immunity because the "plaintiff will never have a claim against the defendant based on the particular facts alleged." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir. 1994).

### D.    Supplemental jurisdiction

When a suit contains federal law and state law claims, the district court has federal jurisdiction over the federal law claims and has discretion whether to exercise supplemental jurisdiction over the remaining state law claims. *Pennie v. Obama*, 255 F. Supp. 3d 648, 677 n.5 (N.D. Tex. 2017) (citing 28 U.S.C. § 1367). But a district court may "decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." *Alford v. State Parking Servs.*, No. 3:13-cv-4546-L, 2014 WL 6977639, at *6 (N.D. Tex. Dec. 10, 2014) (*see also* 28 U.S.C. § 1367(c)(3)).

## III.    ANALYSIS

### A.    Eytalis cannot plead a claim under the Clayton Act because it does not apply to services.

Defendants argue that Eytalis's claims under the Clayton Act cannot proceed because they do not involve the sale or lease of goods, wares, merchandise, machinery, supplies, or other commodities. ECF No. 53 at 18. They further argue that because the multiple listing service is not a good, the Court must dismiss Eytalis's claims under the Clayton Act. *Id*. In response, Eytalis concedes that "[c]ourts have found that tying arrangements involving services may still be challenged under Section 1 of the Sherman Act, even if they do not fall neatly within the Clayton Act's framework." ECF No. 54 at 10.

Section 3 of the Clayton Act, by its express terms, makes it unlawful to enter tying arrangements, whereby goods are sold on the condition or understanding that the purchaser will not use or deal in the goods of a competitor of the seller, where the effect may be to lessen competition or tend to create a monopoly. Eytalis asserts that Defendants "unlawfully restrict competition in the real estate market by requiring brokers to join multiple associations as a precondition for accessing MLS services." ECF No. 51 at 4. She argues that "[t]he forced

membership structure substantially lessens competition by preventing alternative MLS systems from entering the market. This conduct violates the Clayton Act, 15 U.S.C. § 14…" *Id.* at 12. However, the Fifth Circuit has held that a multiple listing service is just that, a service, not a commodity. *See Pope v. Miss. Real Estate Com.*, 872 F.2d 127, 130 (5th Cir. 1989) (referring to the MLS at issue as a "service"). Consequently, the Clayton Act does not apply to Eytalis' claims since a violation of the act must involve the sale or lease of "goods, wares, merchandise, machinery, supplies, or other commodities." 15 U.S.C. § 14; *see also Crossland v. Canteen Corp.*, 711 F.2d 714, 718 n.1 (5th Cir. 1983) ("The Clayton Act requires that both the tying and the tied products be goods. … the alleged tying product here was the Canteen franchise, which is an intangible, not a good. The plaintiffs thus could not recover under the Clayton Act.").

**B.    Eytalis does not plead facts to demonstrate an antitrust injury.**

"The Sherman Act makes every contract, combination, or conspiracy in unreasonable restraint of the interstate or foreign commerce illegal." *Hartford Fire Ins., Co. v. California*, 509 U.S. 764, 769 (1993). Section 2 of the Sherman Act also makes any act, attempt, or conspiracy of monopolization illegal. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004); *Stewart Glass & Mirror v. Auto Disc. Ctrs. Inc.*, 200 F.3d 307, 316 (5th Cir. 2000). Before applying the act, the Court "must establish whether plaintiff had standing to maintain this claim under the Sherman Act. The question of standing is a preliminary one, to be answered from examination of the allegations of the complaint." *Transource Int'l, Inc. v. Trinity Indust., Inc.*, 725 F.2d 274, 280 (5th Cir.1984) (internal quotation marks omitted). Section 4 of the Clayton Act, 15 U.S.C. § 15, enables a private citizen to bring a suit to enforce the Sherman Act. *Ancar v. Sara Plasma, Inc.*, 964 F.2d 465, 468 (5th Cir. 1992); *Jayco Sys., Inc. v. Savin Bus.*

*Machs. Corp.*, 777 F.2d 306, 313 (5th Cir. 1985). An antitrust plaintiff therefore must have standing under section 4 of the Clayton Act to bring a Sherman Act claim. *Id.*

The Clayton Act allows a plaintiff to sue for treble damages if the plaintiff was "injured in his business or property by reason of anything forbidden in the antitrust laws ... in any district court of the United States in the district in which the defendant resides ... ." 15 U.S.C. § 15. The elements of antitrust standing are: "1) injury-in-fact, an injury to the plaintiff proximately caused by the defendants' conduct; 2) antitrust injury; and 3) proper plaintiff status, which assures that other parties are not better situated to bring suit." *Doctor's Hosp. of Jefferson, Inc. v. Southeast Med. Alliance*, 123 F.3d 301, 305 (5th Cir. 1997). To state a claim for "antitrust injury," a private plaintiff must sue for injury that "is of the type the antitrust laws were intended to prevent and that flows from that which makes defendant's acts unlawful." *Brunswick Corp. v. Pueblo Bowl–O– Mat, Inc.*, 429 U.S. 477, 489 (1977). An "injury, although causally related to an antitrust violation, nevertheless will not qualify as 'antitrust injury' unless it is attributable to an anticompetitive aspect of the practice under scrutiny... ."*Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). Courts consider "(1) whether the plaintiff's injuries or their causal link to the defendant are speculative, (2) whether other parties have been more directly harmed, and (3) whether allowing this plaintiff to sue would risk multiple lawsuits, duplicative recoveries, or complex damage apportionment." *Cont'l Auto. Sys., Inc. v. Avanci, LLC*, 485 F. Supp. 3d 712, 730 (N.D. Tex. 2020) (quoting *McCormack v. Nat'l Collegiate Athletic Ass'n*, 845 F.2d 1338, 1341 (5th Cir. 1988).

Because of the nature of the antitrust standing inquiry, the Court must determine the exact relationship between Defendants' actions and Eytalis's alleged injuries. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 535 (1983). While the

Court must construe the Third Amended Complaint in the light most favorable to Eytalis, the Court may not rely on "conclusional allegations or legal conclusions disguised as factual allegations." *Lovick v. Ritemoney, Ltd*., 378 F.3d 433, 437 (5th Cir. 2004). The Court must carefully examine the pleading to determine in what capacity Eytalis was allegedly harmed.

Eytalis has not properly pleaded antitrust injury because she fails to plead injury to competition, as opposed to only injury to herself. Her complaint details her own injuries arising from Defendants' rules concerning non-member annual dues for agents and requirements that she either pay dues for inactive agents or no longer serve as their sponsoring broker. ECF No. 51 at 8-10. In no way does Eytalis connect this injury to a negative impact on competition in any relevant market. *See Taylor v. Christus St. Joseph's Med. Ctr.*, No. 5:04-cv-153-DF, 2006 WL 1582097, at *3 (E.D. Tex. Mar. 28, 2006), *aff'd*, 216 F. App'x 410 (5th Cir. 2007); *Jolley v. Texas Ass'n of Realtors, Inc.*, No. A-08-CA-364-SS, 2008 WL 11333898, at *3 (W.D. Tex. Aug. 25, 2008) (finding that because plaintiffs only alleged injury to themselves, there was no antitrust injury).

Eytalis's pleading includes conclusory statements like "[p]laintiff and similarly situated brokers are subject to excessive and unjustified fees due to the forced memberships…," and "[d]efendants' enforcement of these dues policies disproportionately affects minority brokers and independent agencies." ECF No. 51 at 7, 11. Eytalis also pleads "[t]he tying arrangement harms competition by forcing brokers who wish to access MLS services, which constitute an essential facility, to pay for association memberships they may not need or want." *Id*. at 7. However, these vague statements do not suffice as facts in support of a claim under *Iqbal*. *See Honeywell Int'l Inc. v. Lone Star Aerospace, Inc.*, No. 3:24-cv-430-N, 2024 WL 4093183, at *3 (N.D. Tex. Sept. 4, 2024) (dismissing antitrust complaint for failure to state a claim where the plaintiff included only "conclusory allegations, without factual allegations to support them"). Eytalis's statements

regarding injuries to unidentified "other brokers" are vague and conclusory. Eytalis pleads no other facts to support her conclusion that Defendants harmed competition. Because Eytalis fails to sufficiently identify injury to any other person, the Court cannot reasonably infer a market-wide injury. Consequently, she does not plead an antitrust injury.

### C.    Eytalis does not plead facts to identify a legally supported market.

As a prerequisite to any antitrust claim, Eytalis must allege a relevant market in which the Court can assess the anticompetitive effects of the challenged activity. *See Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 29 (1984); *Apani Southwest, Inc. v. Coca Cola Enter., Inc.*, 300 F.3d 620, 626, 628 (5th Cir. 2002). "Without a definition of the relevant market, there is no way to measure a company's ability to act as a monopolist." *United States v. Eastman Kodak Co.*, 63 F.3d 95, 104 (2d Cir. 1995).

A relevant market consists of a market for the specific product at issue, the market for reasonably interchangeable products, and a geographic market, or the area in which sellers of the relevant product effectively compete. *See United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Whether the plaintiff has pleaded a relevant market is usually a question of fact, but in some cases may be a matter of law. *Seidenstein v. Nat'l Med. Enters., Inc.*, 769 F.2d 1100, 1106 (5th Cir. 1985). Eytalis must identify the relevant product and geographic markets in compliance with the rules of "reasonable interchangeability" and "cross-elasticity of demand." *Apani*, 300 F.3d at 626, 628 (dismissing the plaintiff's Sherman Act claim for failure to plead a relevant market); *Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F. Supp. 1544, 1550-51 (S.D. Tex. 1991) (same). Courts analyzing whether a plaintiff has met its burden should consider both the "extent to which the seller's product is 'interchangeable in use' and the degree of 'cross-elasticity of demand between the product itself and substitutes for it.' " *Id.*

Eytalis pleads that the relevant market here is multiple listing services. *See* ECF No. 51 at 7 ("This structure has created an anti-competitive monopoly over MLS services…"); *see also* ECF No. 54 at 14 ("Plaintiff has identified MLS services as a distinct and necessary market in which Defendants exert monopoly control."). However, Eytalis pleads no facts to support analysis of either the interchangeability of a multiple listing services or its cross-elasticity of demand. As a result, the Court is unable to determine whether a relevant product market exists. Courts routinely dismiss antitrust claims that define a market without these basic allegations. *See Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 549 (1993) (reversing case where instructions permitted the jury to infer elements "without any proof of the relevant market…"). Accordingly, the Court must dismiss Eytalis's case because she has not pleaded sufficient facts to support the inference that a market exists for her antitrust claim.

In response to the Motion to Dismiss, Eytalis cites *United States v. Realty Multi-List, Inc*., to argue that the multiple listing service system in Wichita Falls constitutes a separate relevant market because it provides a unique service not interchangeable with other real estate listing platforms and thus creates an exclusive market that requires antitrust scrutiny. ECF No. 54 at 14-15; 629 F.2d 1351, 1370 (5th Cir. 1980). However, *Realty Multi-List* concerned a multiple listing service that imposed additional barriers to entry including "a favorable credit report and business reputation, … an office open during customary hours of business, and purchase … of RML stock at a fee set in the discretion of the Board of Directors." *Realty Multi-List, Inc.*, 629 F.2d at 1362. Further, the MLS in that case could exclude a broker "it determines to be generally unfit to be a member of the service." *Id*. at 1381. The court found that such barriers threatened competition by arbitrarily excluding brokers from market participation. *See. id*. at 1374, 1379-80. Eytalis does not allege any facts to show that the Wichita Falls multiple listing service has any of these potentially

anticompetitive barriers. Eytalis's assertions that MLS services are unique and thus not subject to the requirements of *Apani* are not persuasive. She does not plead any underlying facts in her complaint to support an analysis of either the product or geographic market as required. Accordingly, she has not pleaded facts to show a plausible relevant market.

### D.    Eytalis does not plead an agreement between Defendants.

The Sherman Act prohibits agreements that restrain trade. *See Ariz. v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 342 (1982). To establish a violation of § 1 of the act, Eytalis must plead that "(1) [the defendants] engaged in a conspiracy, (2) the conspiracy had the effect of restraining trade, and (3) trade was restrained in the relevant market." *Apani*, 300 F.3d at 627. To satisfy the conspiracy element, she must show "that the defendants engaged in concerted action, defined as having 'a conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Golden Bridge Tech., Inc. v. Motorola, Inc*., 547 F.3d 266, 271 (5th Cir. 2008) (quoting *Monsanto Co. v. Spray–Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)). "Because § 1 … does not prohibit [all] unreasonable restraints of trade ... but only restraints effected by a contract, combination, or conspiracy, [t]he crucial question is whether the challenged anticompetitive conduct stem[s] from independent decision or from an agreement, tacit or express," *Twombly*, 550 U.S. 544, at 553 (internal citations omitted).

Eytalis pleads that "NAR sets national policies, which are implemented by TAR and WFAR, resulting in mandatory membership and penalties for noncompliance." ECF No. 51 at 5. Defendants argue Eytalis does not allege the existence of an agreement between Defendants to restrain trade. ECF No. 53 at 21. Further, they argue that "Plaintiff offers no non-conclusory allegations of an agreement between the Defendants to condition WFAR's MLS services on association memberships, nor does she allege how such a condition unlawfully restrains trade." *Id*.

12

at 22. They continue that she "pleads no facts suggesting that either NAR or TAR determine who participates in the Wichita Falls MLS." *Id*. Eytalis responds that she pleaded the existence of an agreement between Defendants to condition MLS access on membership, which is an unlawful restraint on trade. ECF No. 54 at 16.

However, the Third Amended Complaint is devoid of facts to support a conclusion that NAR, TAR, or WFAR agreed to restrain trade. Eytalis pleads conclusions that they restrained trade through their rules, regulations, and bylaws, but she does not state facts showing that their objectives were unlawful as the law requires. *See Golden Bridge Tech.*, 547 F.3d at 271; *Twombly*, 550 U.S. at 556 ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice."). The Third Amended Complaint is defective because it "does not [] allege any specific facts demonstrating an intention on the part of the [defendants], or any other party to engage in a conspiracy." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 375 (5th Cir. 2014); *see Broyles v. Wilson*, No. 93-3132, 1993 WL 347222, at *4 (5th Cir. 1993) (affirming dismissal where complaint contained no specific facts showing that the defendant and his alleged co-conspirators intended to join a conspiracy); *see also Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1159 (5th Cir.1992) (holding plaintiff's pleadings were sufficient because in addition to simply alleging that a conspiracy existed, the complaint indicated that the defendants met and collectively agreed on a method of manipulating the relevant market). But here, Eytalis merely repeats conclusory statements that do not lead to an inference of an agreement or conspiracy to restrain competition. "The Supreme Court instructs that such a complaint falls short of the requirements of Rule 8(a)(2)." *Marucci Sports*, 751 F.3d at 375 (citing *Twombly*, 550 U.S. at 557).

**E.    Eytalis does not provide facts to support a tying arrangement between Defendants and the multiple listing service.**

The Third Amended Complaint alleges that Defendants created a "tying arrangement" that conditions access to the multiple listing service to membership in NAR, TAR, and WFAR. ECF No. 51 at 4-7. Eytalis asserts that other brokers may not need or want to pay membership fees for access to MLS, but this arrangement results in restricting competition for brokers seeking alternate solutions. *Id*. at 10. She alleges that this arrangement is both a *per se* violation and an unreasonable restraint of trade under the Sherman Act. *Id*. at 12. In response, Defendants argue that there is no *per se* violation, and the Court should analyze Eytalis's claims under the rule-of-reason. ECF No. 53 at 23. Further, they argue that Eytalis does not state facts to "adequately allege harm in the market for the tied product." *Id*. at 23-24. Eytalis replies that she "provides specific factual allegations detailing the anti-competitive conduct," including "illegal tying arrangements." ECF No. 54 at 6.

A tying arrangement is "an agreement by a party to sell one product [(also called a tying product)] but only on the condition that the buyer also purchases a different (or tied) product, or at least agrees that he will not purchase that product from any other supplier." *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co*., 520 F.3d 393, 405 (5th Cir. 2008) (quoting *Eastman Kodak Co. v. Image Technical Servs*., 504 U.S. 451, 461(1992)). The essential characteristic of an illegal tying arrangement "lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Ill. Tool Works Inc. v. Indep. Ink, Inc*., 547 U.S. 28, 34-35 (2006) (citation omitted). While tying arrangements are often included in the list of *per se* violations of the Sherman Act, not all tying arrangements are *per se* unlawful. *See N. Texas Specialty Physicians v. F.T.C*., 528 F.3d 346, 360 (5th Cir. 2008) (quoting *Maricopa Cnty.*

*Med. Soc.*, 457 U.S. at 344 n.15). To state a claim for *per se* tying, a plaintiff must plausibly allege facts showing:

> (1) Two separate products (as opposed to components of a single product); (2) The two products are tied together or customers are coerced; (3) The supplier possesses substantial economic power over the tying product; (4) The tie has an anticompetitive effect on the tied market; and (5) The tie affects a not insubstantial volume of commerce.

*See United Farmers Agents Ass'n, Inc. v. Farmers Ins. Exch*, 89 F.3d 223, 235 n.6. (5th Cir. 1996); *see also Bob Maxfield, Inc. v. American Motors Corp*., 637 F.2d 1033, 1037 (5th Cir. 1981).

Specifically, Eytalis must plead "two, distinct markets," *Paramount Pictures Corp. v. Johnson Broad. Inc.*, 432 F. Supp. 2d 707, 709 (S.D. Tex. 2006), properly "define the parameters of each of these markets," and allege that the defendant has market power in the market for the tying product. *Id*. (emphasis added); *see Honeywell Int'l Inc. v. MEK Chem. Corp*., No. 3:17-cv-1390-M, 2018 WL 6737514, at *6 (N.D. Tex. July 5, 2018) (citations omitted). The Court analyses a tying arrangement that does not meet these requirements under the rule-of-reason, which requires a plaintiff to show, among other things, an actual adverse effect on competition. *Id*. (citations omitted).

The Third Amended Complaint does not state a *per se* tying claim because it does not include a proper market definition as discussed above nor valid definitions of two distinct markets. *See Paramount Pictures*, 432 F. Supp. 2d at 709. In the absence of a validly defined market, the Court cannot determine that any of the defendants had market power. *See Honeywell Int'l Inc*., 2018 WL 6737514, at *3, *6. Additionally, Eytalis cannot recover for tying under the rule-of-reason because her complaint does not contain facts showing actual injury to competition. *Id*. at *6. As explained above, Eytalis's allegations of injury to competition are speculative and conclusory. Accordingly, Eytalis has not stated a valid tying claim.

**F.    The Court should decline to exercise supplemental jurisdiction over Eytalis's state law claims.**

In the Third Amended Complaint, Eytalis pleads only that the Court has jurisdiction under 28 U.S.C. § 1331, as her antitrust claims arise under federal law, and supplemental jurisdiction over state law claims of breach of contract and unjust enrichment. ECF No. 51 at 6. Although the Court has federal question jurisdiction over Eytalis's antitrust claims, Eytalis has only alleged supplemental jurisdiction for her breach of contract and unjust enrichment claims. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988) ("the basis upon which jurisdiction depends must be alleged affirmatively and distinctly and cannot be established argumentatively or by mere inference."). Eytalis does not allege that her breach of contract and unjust enrichment claims raise any issue of federal law. Because the Court should dismiss Eytalis's federal claims, the Court should decline to exercise supplemental jurisdiction over her state-law claims and instead dismiss them without prejudice to Eytalis's right to bring them in an appropriate state court. *See Pennie*, 225 F. Supp. 3d at 677 n.5.

**G.    The Court should dismiss Eytalis's claims without leave to amend.**

The decision to allow amendment of the pleadings is within the sound discretion of the Court. *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In determining whether to allow an amendment of the pleadings, the Court considers: undue delay in the proceedings, undue prejudice to the opposing parties, timeliness of the amendment, and futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Chitimacha Tribe of La. v. Harry L. Laws Co., Inc.*, 690 F.2d 1157, 1163 (5th Cir. 1982). "At some point, a court must decide that a plaintiff has had fair opportunity to make her case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792-93 (5th Cir. 1986); *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563 (5th Cir. 2003).

Eytalis has had several opportunities to plead facts showing that Defendants violated federal law. The first was her Original Complaint. ECF No. 1. Soon thereafter, she filed an amended complaint as a matter of right. *See* ECF No. 11. Then, after Defendants filed a Motion to Dismiss and Brief (ECF Nos. 25, 26) outlining the Amended Complaint's deficiencies, Eytalis filed another Motion to Amend (ECF No. 34). The Court granted the motion and ordered the parties to file amended pleadings. *See* ECF No. 50. Eytalis then filed the Third Amended Complaint. ECF No. 51. The Court finds that additional amendment or revisions to the Third Amended Complaint would be an inefficient use of the Court's resources, would cause unnecessary delay, and would be futile. Eytalis apparently has pleaded her best case possible under the existing facts, though she is not entitled to relief under the Clayton Act or the Sherman Act.

## IV.    CONCLUSION

Because Eytalis does not to state a claim upon which the Court can grant relief for violation of the federal antitrust statutes, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** Defendants' Motion to Dismiss (ECF No. 52) and **DISMISS** Eytalis's claims under the Sherman Act and Clayton Acts **without leave to amend**. After dismissing Eytalis's federal law claims, Judge O'Connor should **DISMISS** Eytalis's state law claims **without prejudice**.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates

by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

**SIGNED** on June 9, 2025.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE