IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| **LUZ DE AMOR EYTALIS**, § § **Plaintiff,** § § v. § No. 7:24-cv-00147-O-BP § § **NATIONAL ASSOCIATION OF** § **REALTORS**, *et al.,* § § **Defendants.** § | |

## PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS, AND RECOMMENDATION (ECF No. 73)

Plaintiff Luz de Amor Eytalis, proceeding pro se, respectfully submits these objections to Magistrate Judge Hal R. Ray, Jr.'s Findings, Conclusions, and Recommendation (FCR, ECF No. 73), filed June 9, 2025, under 28 U.S.C. § 636(b)(1) and FRCP 72(b)(1). The FCR recommends granting Defendants' Motion to Dismiss (ECF No. 52) and dismissing Plaintiff's federal antitrust claims (Sherman Act §§ 1-2, Clayton Act § 14, Third Amended Complaint (TAC) ¶¶ 9, 17) with prejudice and state law claims (breach of contract, unjust enrichment, TAC ¶¶ 15, 15.b) without prejudice for failure to state a claim. Plaintiff objects, arguing the FCR wrongly dismisses the TAC's market-wide harm as a personal grievance, misapplies legal standards, and improperly denies amendment despite pro se leniency. Plaintiff requests Judge O'Connor deny dismissal or grant leave to amend.

**I. INTRODUCTION**

Plaintiff's TAC alleges that Defendants National Association of Realtors (NAR), Texas Association of Realtors (TR), and Wichita Falls Association of Realtors (WFAR) unlawfully tie membership to multiple listing service (MLS) access, excluding Plaintiff and other brokers, harming competition, and disproportionately affecting minority and independent agencies (¶¶ 9, 11, 17). Plaintiff seeks $5.8 million in damages (¶ 17). The FCR (pp. 7-15) mischaracterizes these claims as a "personal grievance" and denies amendment as futile, ignoring the TAC's broader allegations and pro se leniency. Evidence like broker Chris Clerihew's experience and nationwide lawsuits, tied to NAR's bylaws, demonstrate systemic harm, supporting the TAC's plausibility or amendment. Plaintiff objects to these findings, asserting her claims merit discovery and trial.

**II. OBJECTIONS**

**A. Objection to Dismissing Sherman Act Claims (FCR pp. 7-15)**

**1. Antitrust Injury (FCR pp. 7-10)**

**FCR Finding:** The FCR dismisses the TAC as a "personal grievance" ($5,250.79, ¶ 11), labeling claims of market-wide harm "conclusory" (p. 9).

**Basis for Objection:** The FCR mischaracterizes the TAC's allegations of market-wide harm from WFAR's tying of membership to MLS access (¶ 9), impacting "similarly situated brokers" and "minority brokers" (¶ 11). Plaintiff's $5.8 million damages (¶ 17, 150 agents/year, trebled) reflect systemic exclusion, plausible under pro se leniency (*Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Plaintiff's claims are consistent with broader antitrust challenges to NAR's practices, as evidenced by DOJ scrutiny (United States v. NAR, No. 1:20-cv-03356, D.D.C.). The TAC aligns with *Realty Multi-List, Inc. v. Am. Home Realty*, 629 F.2d 1351, 1360 (5th Cir. 1980), where

MLS restrictions harmed competition. Defendants' conduct is not mandated by state law. TREC imposes no requirement for sponsoring brokers to enroll inactive or non-local agents in realtor associations. The enforcement of NAR/TR/WFAR bylaws—contrary to TREC's neutral licensing framework—highlights Defendants' independent decision to tie MLS access to costly association memberships, thus artificially increasing entry barriers.

Supporting examples, warranting discovery or amendment, include:

**Chris Clerihew's Experience:** Chris Clerihew, broker for Davis Vernon Real Estate, joined WFAR around July 2024, paying approximately $1,500 in dues to add agent Jamie Roach to the Wichita Falls MLS. In August 2024, WFAR emailed Clerihew, demanding he add all his agents in the office to the board within 30 days or face termination, a requirement not disclosed initially. Since this would have incurred a significant financial burden for not only himself but his agents, Clerihew refused, and his membership was terminated and none of the funds he paid to become a member were reimbursed. Roach, who needed MLS access, was forced to move agencies to maintain access to MLS. She has since generated more than 1.2 million in sales to date, costing thousands in potential commission to Clerihew's brokerage (¶ 11—"similarly situated brokers"). This mirrors Plaintiff's exclusion (ECF No. 40-4—$3,496.53 fees; ECF No. 40-7—threats), showing WFAR's policies harm multiple brokers. Clerihew's experience directly supports TAC ¶ 11's allegation of harm to 'similarly situated brokers,' demonstrating WFAR's tying policy's broader impact.

**Pending Lawsuits:** These cases are cited to illustrate the TAC's claims of systemic harm and support the need for amendment, not to establish Defendants' liability. These cases show the plausibility of Plaintiff's allegations of systemic harm. Courts may take judicial notice of their existence as public records, not their factual findings (Funk v. Stryker Corp., 631 F.3d 777, 783

(5th Cir. 2011); Lovelace v. Software Spectrum Inc., 78 F.3d 1015, 1018 (5th Cir. 1996)). Nationwide cases, tied to NAR's bylaws, confirm systemic harm and not isolated to plaintiff's claim:

*Hardy v. NAR* (E.D. Mich., No. 2:24-cv-12102, filed Aug. 12, 2024) **a class action** alleges NAR's rules tie MLS access to membership, harming Michigan brokers.

*DeYoung v. NAR* (M.D. La., No. 3:25-cv-00001, filed Jan. 2, 2025) claims NAR's mandatory membership violates Sherman Act § 1, harming Louisiana brokers.

*Moore v. NAR* (E.D. Pa., No. 2:24-cv-01607, filed Nov. 25, 2024) stifle competition and limit market access, forcing professionals to comply with NAR's rules and dues without viable alternatives, like Plaintiff.

*Diaz v. NAR* (C.D. Cal., No. 2:25-cv-01594, filed June 9, 2025) alleges NAR's Variable Dues Formula, per Bylaw Article 2, Sections 1 and 2, ties MLS access to non-member dues, harming California brokers.

*Milko v. NAR* (N.D. Ga., No. 1:25-cv-02088, filed Apr. 15, 2025) claims NAR's triple membership is an illegal conspiracy.

*Muhammad v. NAR* (N.D. Pa., No. 5:24-cv-05543, filed Oct. 16, 2024) alleges NAR's cooperative compensation rule, enforced via MLS, inflates commissions, harming sellers and competition.

Ray's dismissal as a "personal grievance" ignores the TAC's plausible market-wide scope (¶ 11) and pro se leniency, risking reversible error (*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Discovery, such as WFAR emails from August 2024 or NAR's internal directives enforcing bylaws, is critical to substantiate these plausible allegations, as recognized in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 559 (2007) (discovery aids

plausible claims). As the Supreme Court held in *Twombly*, 550 U.S. at 570, plaintiffs need only plead enough facts "to nudge their claims across the line from conceivable to plausible." The TAC presents plausible allegations of injury, exclusion, and concerted enforcement. Permitting limited discovery would uncover the specific records (e.g., WFAR/NAR communications or fee schedules) necessary to prove harm and intent.

**Request:** Deny dismissal of Sherman Act claims for lack of antitrust injury.

## 2. Relevant Market (FCR pp. 10-12)

**FCR Finding:** The FCR faults Plaintiff for not defining a relevant market with interchangeability or cross-elasticity (p. 11).

**Basis for Objection:** The FCR errs by demanding specificity beyond pleading. The TAC identifies Wichita Falls MLS as the sole platform (¶ 7), implying no substitutes, as Clerihew's exclusion shows. Cases like *Hardy*, *DeYoung*, *Diaz* (Bylaw Article 2), *Milko*, and *Muhammad* allege NAR's bylaw-driven MLS control creates monopolistic markets, supporting Plaintiff's claim (*Realty Multi-List*, 629 F.2d 1351, 1360). Market definition is factual at pleading (*Seidenstein v. Nat'l Med. Enters.*, 769 F.2d 1100, 1106 (5th Cir. 1985)). Moreover, the DOJ/FTC Horizontal Merger Guidelines §4 define a relevant market as one in which a hypothetical monopolist could profitably impose a "small but significant and non-transitory increase in price" (SSNIP). Here, WFAR's exclusive control over MLS access enables it to extract inflated membership dues and enforce uniform rules without viable alternatives—confirming its dominance in the product market.

**Request:** Deny dismissal for lack of relevant market definition.

## 3. Agreement (FCR pp. 12-13)

**FCR Finding:** The FCR finds no facts showing an agreement to restrain trade (p. 12).

**Basis for Objection:** The FCR overlooks the TAC's allegation that NAR's policies (¶ 5, Bylaws, Art. IX, §§ 1, 3) are enforced by TR and WFAR, forming a concerted scheme (*Golden Bridge Tech., Inc. v. Motorola*, 547 F.3d 266, 271 (5th Cir. 2008)). *Hardy*, *DeYoung*, *Moore*, *Diaz*, *Milko*, and *Muhammad* challenge similar bylaw-driven policies, suggesting coordination.

**Request:** Deny dismissal for lack of agreement.

### 4. Tying Arrangement (FCR pp. 14-15)

**FCR Finding:** The FCR dismisses Plaintiff's tying claim for lacking distinct products, market power, and anticompetitive effect (p. 14).

**Basis for Objection:** The FCR mischaracterizes the TAC's tying claim (¶ 9), alleging membership (tying product) is required for MLS access (tied product). Defendants' membership hierarchy functions as a vertical tying arrangement. WFAR denies MLS access unless brokers first obtain TR and NAR memberships—services that offer no direct value to certain brokers or agents. This structure artificially inflates costs and deters competition, functioning as a barrier to entry for non-affiliated firms or competing listing services. Clerihew's inclusion of all agents demands and cases like *DeYoung*, *Diaz* (Bylaw Article 2), *Milko*, and *Muhammad* show NAR, TR, and WFAR's market power and anticompetitive effect (*United Farmers Agents Ass'n v. Farmers Ins. Exch.*, 89 F.3d 223, 235 (5th Cir. 1996)). Defendants exploit control over MLS access—an essential facility—to enforce payment for unrelated services, creating a de facto tollbooth on market participation for independent brokers.

**Request:** Deny dismissal for lack of a tying arrangement.

### B. Objection to Dismissing Clayton Act Claim (FCR p. 6)

**Finding:** FCR (p. 6) holds the Clayton Act (15 U.S.C. § 14) is inapplicable because MLS is a service (*Pope v. Miss. Real Estate Comm'n*, 872 F.2d 127, 130 (5th Cir. 1989)).

**Basis for Objection:** While Plaintiff concedes MLS is a service (ECF No. 54, p. 10), her primary tying claim is under Sherman Act § 1 (TAC ¶ 9), which applies to services (Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 21 (1984)). The FCR's focus on the Clayton Act overlooks this, despite pro se leniency (Haines v. Kerner, 404 U.S. 519, 520 (1972)) which requires construing Plaintiff's pleadings to encompass Sherman Act § 1 tying claims involving services (Erickson v. Pardus, 551 U.S. 89, 94 (2007)). The tying of membership (a service) to MLS access (another service) remains actionable under Sherman Act § 1. The MLS, as an indispensable service for real estate transactions, is pivotal to Defendants' tying scheme, amplifying market power and harm (TAC ¶¶ 9, 11).

**Request:** Clarify that Clayton Act dismissal does not affect Plaintiff's Sherman Act tying claim.

### C. Objection to Denying Leave to Amend (FCR pp. 16-17)

**Finding:** The FCR erroneously denies amendment, claiming Plaintiff's three complaints (ECF Nos. 1, 11, 51) are her "best case" and amendment is futile (pp. 16-17, citing *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999)).

**Basis for Objection:** The FCR misapplies FRCP 15(a)(2), which favors amendment "when justice so requires" (*Foman v. Davis*, 371 U.S. 178, 182 (1962)). Ray's futility finding ignores pro se leniency (*Haines v. Kerner*, 404 U.S. 519, 520; *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) and evidence showing amendment could cure deficiencies. Amendment would allow Plaintiff to add specific facts, such as Clerihew's loss and market exclusion from WFAR's termination and bylaw enforcement details from *Diaz v. NAR* (Bylaw Article 2) and WFAR's membership agreements or fee schedules, to clarify market-wide harm (¶ 11), define the relevant market (¶ 7), and detail the agreement among Defendants (¶ 5). These additions directly address

the FCR's concerns, making amendment non-futile. Amendment will not prejudice Defendants, as no jury is involved at this stage, and discovery has not commenced, allowing ample time to address refined claims without undue burden (Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 246 (5th Cir. 1997)).

While Plaintiff has previously amended her complaint, newly available facts—including the exclusion of broker Chris Clerihew in August 2024 and the recent filing of *Diaz v. NAR* (C.D. Cal., June 9, 2025)—support a more precise amendment. These facts directly address the market definition, anticompetitive enforcement, and tying arrangement deficiencies noted in the FCR.

Plaintiff's evidence (ECF Nos. 40-4, 40-7—$3,496.53 fees, threats; Clerihew's loss) and cases like *Hardy* (E.D. Mich., No. 2:24-cv-12102), *DeYoung* (M.D. La., No. 3:25-cv-00001), *Moore* (E.D. Pa., No. 2:24-cv-01607), *Diaz* (C.D. Cal., No. 2:25-cv-01594, citing Bylaw Article 2), *Milko* (N.D. Ga., No. 1:25-cv-02088), and *Muhammad* (N.D. Pa., No. 5:24-cv-05543) provide specific facts (e.g., bylaw-driven tying) to clarify market harm, definition, agreement, or tying (¶¶ 9, 11, 17). Discovery into WFAR's MLS—e.g., Clerihew's August 2024 email—could uncover fees or NAR directives. The Fifth Circuit has held that "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). The Fifth Circuit has consistently reversed dismissals with prejudice where pro se plaintiffs could cure deficiencies through amendment, particularly in complex antitrust cases (Brewster v. Dretke, 587 F.3d 764, 767-68 (5th Cir. 2009)). Given Plaintiff's pro se status, evolving antitrust precedent, and access to new facts, amendment would not be futile but necessary to fully state a plausible claim under *Twombly* and Rule 8. Denying amendment risks Plaintiff's $5.8M justice

right, constituting reversible error (*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)).

**Request:** Grant leave to amend federal claims.

### D. Objection to Dismissing State Law Claims (FCR p. 16)

**Finding:** FCR (p. 16) recommends dismissing breach and unjust enrichment (¶¶ 15, 15.b) without prejudice (28 U.S.C. § 1367(c)(3)).

**Basis for Objection:** If federal claims survive, jurisdiction holds (28 U.S.C. § 1367(a)). Breach (¶ 15—WFAR's retaliation, ECF No. 40-6—$498 ignored; ECF No. 40-7—threats) and unjust enrichment (¶ 15.b—$3,496.53, ECF No. 40-4) are plausible (*Texas Gas Utils. Co. v. Barrett*, 460 S.W.2d 409 (Tex. 1970); *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000)). Dismissing risks state court delays—judicial economy favors retention.

**Request:** Retain state claims if federal claims proceed; otherwise, allow amendment.

### III. CONCLUSION

Plaintiff requests Judge O'Connor deny ECF No. 52, allow the case to proceed, or grant leave to amend. State claims should be retained or amended if federal claims survive. Should the Court determine the TAC remains deficient, Plaintiff respectfully requests leave to amend pursuant to Rule 15(a)(2), as outlined in Section II.C. Plaintiff stands ready to submit a Fourth Amended Complaint incorporating the new facts and clarifications presented herein.

**DATED:** June 20, 2025
/s/ Luz de Amor Eytalis
Luz de Amor Eytalis, Pro Se
4200 Fairway Boulevard
Wichita Falls, TX 76308
Phone: 940-257-3875
Email: louallen76@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on June 20, 2025, this was filed via CM/ECF, notifying Sean Gorman (sean.gorman@whitecase.com) and counsel for NAR/TR.

/s/ Luz de Amor Eytalis

**NOTICE OF AI USE**

This document was prepared with assistance from Grok, an AI tool created by xAI, to aid in drafting and organizing arguments. All factual assertions and legal arguments were provided or reviewed by Plaintiff to ensure accuracy and compliance with court requirements.